UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORGE ARIAS and ANGEL ARIAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| CITY OF EVERETT, MAYOR CARLO | ) | CIVIL ACTION |
| DEMARIA, POLICE OFFICER JASON | ) | NO.  19-10537-JGD |
| LEONARD OF EVERETT P.D., POLICE | ) | |
| OFFICER CHRIS HANNON OF EVERETT | ) | |
| P.D., CHIEF OF POLICE STEVEN MAZZIE, | ) | |
| HOME DEPOT, and KRIS GAFF | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANTS' MOTIONS TO DISMISS

December 4, 2019

DEIN, U.S.M.J.

### I. INTRODUCTION

This action arises out of the wrongful conviction of Jorge Arias ("Mr. Arias") for

attempted larceny from a Home Depot, in Everett, Massachusetts, and his subsequent

incarceration for almost five years by the Commonwealth of Massachusetts, and then by ICE,

until his conviction was vacated and he was acquitted following a retrial.  The new trial was

granted on the grounds that the Everett Police Department had withheld material evidence.  It

is Mr. Arias' contention that Home Depot, and its then Manager of Loss Prevention, Kris Gaff,

also withheld evidence from both trials in the form of surveillance tapes which may have

exonerated him as well.  The plaintiff Angel Arias ("Angel") is Mr. Arias' minor son.  The

plaintiffs brought this suit against the City of Everett, its Mayor Carlo DeMaria, its Chief of Police Steven Mazzie, and Police Officers Jason Leonard and Chris Hannon (the "Municipal Defendants"), and Home Depot USA, Inc. and its former Manager Kris Gaff ("Home Depot Defendants").

This matter is before the court on the Home Depot Defendants' motion to dismiss (Docket No. 8) and the Municipal Defendants' motion to dismiss (Docket No. 11). For the reasons detailed here, the Home Depot Defendants' motion is ALLOWED and the Municipal Defendants' motion is ALLOWED IN PART and DENIED IN PART as follows: Count I is dismissed as to the City of Everett and the individual defendants in their official capacities only; Count II is dismissed against the individual defendants in their official capacities only; Count VI is dismissed as to the City of Everett only; and Count VII is dismissed against the individual defendants in their official capacities only. Otherwise, the Municipal Defendants' motion to dismiss is denied.

## II. <u>STATEMENT OF FACTS</u>

The following summarizes the facts as alleged in the plaintiffs' Amended Complaint. (Docket No. 1 Ex. B ("<u>Compl.</u>")). On the night of February 27, 2007, there was an attempted larceny at the Home Depot located in Everett, Massachusetts. (<u>Compl.</u> ¶ 5). Officer Leonard, a defendant, testified at Mr. Arias' trial that, while working a paid detail at the Home Depot, around 8:00 p.m. he saw a man throwing boxes over the garden center wall. (<u>Id.</u>). The man went back inside the Home Depot. (<u>Id.</u>). Officer Leonard drove over to the Garden Center and confronted a man who had driven a truck over to the area. (<u>Id.</u>). The man got back in his truck and "lurched" toward Officer Leonard, before reversing and driving away. (<u>Id.</u>). A chase

ensued involving the Everett, Chelsea, and Boston police departments, including the defendant

Officer Hannon of the Everett Police. (Id. ¶¶ 5, 6). Boston police apprehended Mr. Arias. (Id.

¶ 5). Officer Leonard testified that he responded to an address in East Boston where the Boston

Police were holding Mr. Arias and he identified Mr. Arias as the man he had seen outside Home

Depot. (Id.).

At Mr. Arias' first trial in 2008, three witnesses were called to testify on behalf of the

prosecution. Officer Leonard identified Mr. Arias.  (Id.).  He described the man who he inter-

acted with at Home Depot as a "Hispanic male" whose face was "burnt in his memory." (Id.).

Officer Hannon testified he could not identify the defendant despite the fact that the man

"came right at him" and was "inches away."  (Id. ¶ 6). Finally, defendant Kris Gaff, the Home

Depot Asset Protection Manager, testified that he had reviewed the store surveillance video

and he could not identify the defendant. (Id.). He also testified as to the value of the goods and

that it was common to see people who dressed and looked like the defendant at Home Depot.

(Id.).

Mr. Arias counsel called Jose Palacios, who testified that he had loaned Mr. Arias his old

truck so that he could get to work, and that the truck was not in a condition to drive at high

speeds.  (Id. ¶ 7).  Mr. Arias also testified, professing his innocence and testifying that he had

gone to work in Peabody and then driven straight home to East Boston.  (Id.).  Mr. Arias

testified that he had never been to the Home Depot in Everett and that he did not even know

where it was located.  (Id.).

On August 4, 2008, a jury convicted Mr. Arias. (Id. ¶ 8). He was found guilty of larceny

over $250, assault with a dangerous weapon, and reckless operation of a motor vehicle. (Id.).

He was sentenced to 4½ years in jail. (Id.). During his incarceration, Mr. Arias suffered "severe emotional distress, anxiety, post-traumatic stress, and embarrassment, loss of employment and opportunities, and loss of residency[.]" (Id. ¶16). He maintained his innocence throughout. (Id. ¶ 9).  Upon Mr. Arias' conviction, his minor son, Angel, went to live with his aunt and uncle who were in the United States.  (See id. ¶ 12).[1]  Angel's separation from his father caused him to become angry and depressed.  (Id.).  He went for mental health counseling and would cry every day because his father was not able to be with him. (Id.). He had a difficult time in school, his grades suffered, and he had to repeat a grade. (Id.).

"At the time of his trial, Mr. Arias, a native of El Salvador, was a legal resident of the United States pursuant to temporary protected status."  (Id. ¶ 10).  He lost that status as a result of his conviction so, after serving his sentence, Mr. Arias was taken into custody by ICE where he remained until he was released on bond on January 17, 2013. (Id. ¶¶ 10-11, 14). During that time, Angel continued to live with his aunt and uncle.  (Id. ¶ 12).

Sometime prior to January 17, 2013, Mr. Arias' conviction was vacated.  (See id. ¶ 14).  It was discovered that exculpatory evidence had not been produced or disclosed to the defense. (Id. ¶ 13).  The plaintiffs originally described this missing evidence as a "call log record from the Chelsea Police Department [that] indicated that there were three suspects occupying the black pickup truck that the officers were chasing and not just one occupant as officer Leonard testi-fied to and wrote in his police report." (Id.).  In the Amended Complaint, the plaintiffs allege

---

[1]  Angel's exact age is not in the Amended Complaint.  Mr. Arias asserts in his opposition to the Home Depot Defendants' motion to dismiss that Angel was 8 years old when his father was first incarcerated. (See Pls. Home Depot Opp'n (Docket No. 14) at 1).

that both Officers Hannon and Leonard testified and reported that there was only one occupant in the truck.  (Id. ¶ 38).

At Mr. Arias' second trial in 2014, Officer Leonard, Officer Hannon, and Kris Gaff again testified.  (Id. ¶ 36).  By the time of the second trial, Kris Gaff was no longer employed by Home Depot but was a police officer with the Everett Police Department. (Id. ¶ 32).  According to the plaintiffs, Mr. Gaff testified as a police officer at the second trial. (Id.). Again, at the second trial Home Depot did not produce the potentially exculpatory evidence of either the Home Depot surveillance video or the Home Depot Asset Protection reports. (Id. ¶ 31). However, the Chelsea call log was admitted into evidence at the second trial, and Mr. Arias was found not guilty. (Id. ¶ 14).

According to the plaintiffs, Mr. Arias "continues to suffer from the consequences of his arrest dating back to 2007, the first trial in 2008 and the continued prosecution of him at the second trial in 2014 and continuing into 2015, 2017, and 2018." (Id. ¶ 33). Mr. Arias continues to be subject to immigration proceedings. (Id. ¶ 34). He currently has no legal status as his temporary protected status was removed following his first conviction. (Id.). Imminent deportation was stayed by his finding of not guilty. (Id.). Mr. Arias continues to "suffer[] mentally and physically due to actions taken by Defendants: Police Officers Hannon and Leonard, and Home Depot and its' [sic] asset protection manager Kris Gaff." (Id.).

Angel also continues to suffer both physically and emotionally. (Id. ¶ 35). He was young while his father was going through two criminal trials, years of incarceration, and immigration proceedings. (Id.). He continues to suffer because Angel is aware his father could be deported at any time. (Id.).

Additional facts will be provided below where appropriate.

**Procedural History**

The plaintiff filed the instant suit on September 27, 2017 in Essex Superior Court.  (See Docket No. 1 at 1).  The complaint alleged 15 counts: Count I - Civil Rights Violations Under Mass. Gen. Laws ch. 12, § 11H-1, Count II - Deliberate Indifference, Count III - Negligent Training, Count IV - Negligent Supervision, Count V - Mass. Tort Claims Act, Count VI - Intentional Infliction of Emotional Distress, Count VII - Negligent Infliction of Emotional Distress, Count VIII - False Imprisonment, Count IX - Abuse of Process, Count X - Malicious Prosecution, Count XI - Wrongful Conviction, Count XII - False Arrest, Count XIII - Defamation, Count XIV - Negligence, Count XV - Pendant Causes of Action.  (Id. at Ex. A.).

In September 2018, the Superior Court dismissed claims III, IV, V, VIII, XI, XII, XIII, XIV and XV with prejudice.  (Docket No. 22 at p. 266/818 ("Mem. of Decision")). Counts I, II, VI, and VII were dismissed, in part, without prejudice.  (Id.).  Superior Court Judge Lu dismissed as untimely the Count I and II claims, "arising out of his alleged misidentification, arrest, and incarceration that commenced on or about February 27, 2007." (Mem. of Decision at 2.).  However, Judge Lu dismissed the claims without prejudice because "[i]t is unclear to the court whether the complaint alleges civil rights violations that may have accrued during Arias's incarceration or his re-trial." (Id.). Similarly, Judge Lu dismissed as untimely Counts VI and VII, "based upon the arrest of Jorge Arias, and the alleged false accusations and false testimony at his trial that concluded on August 4, 2008." (Id. at 3).  Judge Lu granted plaintiffs the opportunity to amend their complaint to clarify the basis for these claims. (Id.).

Plaintiffs filed an Amended Complaint in Superior Court on March 7, 2019. (Docket No. 1 Ex. B). The Amended Complaint re-alleges Counts I, II, VI, VII. (Id.).[2] Defendants jointly removed the case to federal court pursuant to 28 U.S.C. § 1331 on the grounds that Counts I and II present substantial federal issues. (Id.).[3] The Home Depot Defendants then filed their motion to dismiss for failure to state a claim. (Docket No. 8). The Municipal Defendants subsequently filed a motion to dismiss. (Docket No. 11). This court held a hearing regarding the motions to dismiss and took the matter under advisement. (Docket No. 27).

### III.   ANALYSIS – HOME DEPOT DEFENDANTS' MOTION TO DISMISS

#### A.   Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.  When confronted with such a motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999).  As the First Circuit has explained, in considering the merits of a motion to dismiss, the court proceeds in two steps.  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  First, we "isolate and ignore statements in the complaint that simply

---

[2] Plaintiffs did not re-allege Counts IX (abuse of process) or X (malicious prosecution) in their Amended Complaint, although they had not been dismissed by Judge Lu. (See Docket No. 22, Superior Court Docket at entry 37 (p. 639/818)).

[3] Although Count I claims civil rights violations under Mass. Gen. Laws ch. 12, § 11H-I, the defendants asserted in their removal papers that it stated a federal question because of the allegations that the defendants interfered with the plaintiffs' "exercise and enjoyment of the rights secured to him by the Constitution of the United States." (Docket No. 1 at ¶ 5).  Nevertheless, the parties argue Count I as a Massachusetts constitutional claim, and this court will similarly limit its discussion of that Count.  In their removal papers, the defendants asserted that Count II, entitled "deliberate indifference," stated a federal cause of action because "deliberate indifference" "is an element to be proved under 42 U.S.C. § 1983" and plaintiffs had alleged in Count II that they "were denied the rights secured by them by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution." (Docket No. 1 at ¶ 5).  The plaintiffs do not challenge the removal to this court on the basis of a federal question.

offer legal labels and conclusions or merely rehash cause-of-action elements." Id.  Second, we

"take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all

reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."

Id.  Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible entitle-

ment to relief."  See Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929

(2007)).  "Plausible . . . means something more than merely possible[.]"  Schatz, 669 F.3d at 55.

"The bottom line is that the combined allegations, taken as true, must state a plausible, not

merely conceivable, case for relief."  Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d

711, 718 (1st Cir. 2014) (internal citations and quotations omitted).  "Engaging in this

plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense.'"  Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).

In addition, this case is before the court on a removal following a State court order

ruling on a motion to dismiss.  "Whenever any action is removed from a State court to a district

court of the United States . . . [a]ll injunctions, orders, and other proceedings had in such action

prior to its removal shall remain in full force and effect until dissolved or modified by the

district court." 28 U.S.C. § 1450 (2012).  The statute is designed to promote judicial efficiency

when shifting between state and federal court by giving full force and effect to state

proceedings so that they do not need to be duplicated in federal court.  Granny Goose Foods,

Inc. v. Bhd. of Teamsters , 415 U.S. 423, 435-36, 94 S. Ct. 1113, 1122, 39 L. Ed. 2d 435 (1974);

Concordia Partners, LLC v. Pick, 790 F.3d 277, 279 (1st Cir. 2015) ("we read § 1450—in keeping

with its text—merely to preserve the status quo in the removed case. So read, § 1450 simply ensures that the state court order 'remain[s] in full force and effect,' and thus that the filing of the notice of removal does not have the consequential effect of wiping that state court order away.").

Applying these principles to the instant case compels the conclusion that the Home Depot Defendants' motion to dismiss must be allowed.

### B.   The Litigation Privilege[4]

As an initial matter, the actions of Kris Gaff are protected by the litigation privilege, and cannot form the basis of his or Home Depot's liability.[5]  For this reason alone, the claims against Mr. Gaff must be dismissed, as should the claims seeking to hold Home Depot vicariously liable for Mr. Gaff's conduct.

"It is well established that statements made by a witness or party during trial, if pertinent to the matter in hearing, are protected with an absolute privilege[.]"  Correllas v. Viveiros, 410 Mass. 314, 320, 572 N.E.2d 7, 11 (1991), and cases cited.  Thus, "[s]tatements

---

[4] This court recognizes that the state judge did not accept the litigation privilege as a basis for his ruling on the motions to dismiss.  However, the defendants are free to raise the privilege in connection with their motion to dismiss those portions of the amended complaint that the state court judge did not dismiss with prejudice.  See Negron-Almeda v. Santiago, 579 F.3d 45, 51 (1st Cir. 2009) ("interlocutory orders remain open to trial court reconsideration, and do not constitute law of the case." (internal punctuation and quotations omitted)).  The plaintiffs have not asked this court to reconsider any of the state court's rulings dismissing portions of the complaint with prejudice.  Consequently, as noted above, such rulings remain in effect despite the removal to this court.

[5] Officer Leonard's conduct will be discussed more fully in connection with the Municipal Defendants' motion to dismiss.  In connection with the Home Depot Defendants' motion, the relevant inquiry is whether its liability can be based on Officer Leonard's conduct.  Thus, in connection with the Home Depot Defendants' motion, while Officer Leonard's testimony at trial is clearly privileged, this court will assume that he could be held liable for extra-judicial conduct.  See Dear v. Devaney, 83 Mass. App. Ct. 285, 292, 983 N.E.2d 240, 246 (2013), and cases cited (the absolute litigation privilege "has not, however, been extended to police officers' own investigatory reports.").

made in the course of a judicial proceeding that pertain to that proceeding are . . . absolutely privileged and cannot support [civil liability]." Patriot Group, LLC v. Edmands, --- N.E.3d ---, 2019 WL 5959611, *4 (Mass. App. Ct. Nov. 13, 2019) (quoting Correllas, 410 Mass. at 319, 572 N.E.2d at 10). "Moreover, the absolute litigation privilege immunizes the maker of the statements from any civil liability arising from those statements" regardless of the cause of action alleged. Encompass Ins. Co. of Mass. v. Giampa, 522 F. Supp. 2d 300, 308 (D. Mass. 2007) (citation omitted). "To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory." Id. (quoting Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 141, 668 N.E.2d 1329, 1333 (1996)). The absolute privilege for "[s]tatements made in the course of a judicial proceeding which pertain to that proceeding" applies even if the statements are made "with malice or in bad faith." Correllas, 410 Mass. at 319, 572 N.E.2d at 10. Thus, whether Mr. Gaff is considered as an employee of Home Depot, or a Police Officer for the City of Everett, his testimony at trial cannot form the basis of the plaintiffs' claims.

Moreover, to the extent that the plaintiffs are challenging Mr. Gaff's conduct apart from his trial testimony, even the most liberal reading of the complaint establishes that the claim against Mr. Gaff (and Home Depot's liability for his actions) are based on conduct that is pro-tected by the litigation privilege. Thus, the plaintiffs argue that Mr. Gaff

> testified at both trials about the existence of video surveillance or CCTV footage of the suspect but then failed to produce said video surveillance or CCTV footage that had been in his custody and control. By initiating these actions, Kris Gaff on behalf of Home Depot took an active role in prosecuting the Plaintiff on one count of larceny. Without the involvement of Kris Gaff and Home Depot, the police would not have been able to charge or arrest the Plaintiff on the larceny charge. Furthermore, Kris Gaff and the Home Depot continued their involvement in prosecuting the Plaintiff when he

> testified on behalf of Home Depot at the second trial.  Kris Gaff became a
> police officer for the City of Everett before the second trial and therefore was
> working very closely again with Officers Leonard and Hannon.  All three
> officers testified at the second trial against the Plaintiff.

(Pls. Home Depot Opp'n at 3).  Assuming, arguendo, that any of this conduct could be

actionable,[6] all of this conduct relates to the initiation and/or prosecution of a lawsuit, and is

therefore privileged.  See Encompass Ins. Co., 522 F. Supp. 2d at 308.  The litigation privilege

applies to statements made outside of the courtroom that are "preliminary to a proposed

judicial proceeding, or in the institution of, or during the course and as a part of, a judicial

proceeding[.]"  Leavitt v. Bickerton, 855 F. Supp. 455, 456 (D. Mass. 1994) (quoting Restatement

(Second) of Torts § 586 (1989) (describing scope of privilege as applied to attorneys).  See also

Dear v. Devaney, 83 Mass. App. Ct. 285, 292, 983 N.E.2d 240, 246 (2013) ("An absolute privilege

has also been extended to witness statements made to the police.").  Consequently, the claims

against Home Depot based on Mr. Gaff's conduct, and against Mr. Gaff, are barred by the

litigation privilege.

Assuming, arguendo, that the litigation privilege does not result in the dismissal of all

the claims against Home Depot and Mr. Gaff, a review of each Count establishes that Home

Depot's motion to dismiss must be allowed.

---

[6] Nothing herein shall be construed as a statement by this court that Home Depot and/or Kris Gaff had any obligation to turn over any tapes.  The duty to disclose evidence in a criminal prosecution falls to state actors, i.e., prosecutors and law enforcement.  See Drumgold v. Callahan, 707 F.3d 28, 38 (1st Cir. 2013).  Moreover, there is no allegation that the plaintiff ever requested the tape, even in connection with the second trial after the tape's existence had already been disclosed in the earlier trial.

C.    **Count I: Civil Rights Violation Under Mass. Gen. Laws ch. 12 §§ 11H-I**[7]

In the instant case, the plaintiff contends that "Home Depot failed to produce the video surveillance" which was "potentially exculpatory."  (Compl. ¶¶ 9, 31, 38).  In addition, plaintiffs contend that "Home Depot is liable for the actions of Officer Leonard while he was on a paid detail."  (Id. ¶ 20).  Finally, plaintiffs argue that Home Depot is liable for the conduct of Kris Gaff on the theory of vicarious liability for his 2008 trial testimony and for its own withholding of evidence.  (Id. ¶¶ 22, 31).  These allegations do not state a claim against the Home Depot Defendants for violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11H-I ("MCRA").

1.    **Elements of an MCRA Claim**

Under the MCRA, a civil action may be brought by an aggrieved person

> [w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth[.]

Mass. Gen. Laws ch. 12, §§ 11H-I (2014).  "To prevail, a plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion."  Currier v. Nat'l Bd. of Med. Exam'rs, 462 Mass. 1, 12, 965 N.E.2d 829, 837-38 (2012) (citation omitted).  Unlike its federal counterpart, 42 U.S.C. § 1983, the MCRA reaches private

---

[7] Count I refers to the "plaintiff" in the singular, and clearly purports to state a claim only on behalf of Mr. Arias.

actors.  See Buster v. George W. Moore, Inc., 438 Mass. 635, 645, 783 N.E.2d 399, 409 (2003);

Batchelder v. Allied Stores Corp., 393 Mass. 819, 821, 473 N.E.2d 1128, 1130 (1983).  Neverthe-

less, "[t]he Legislature explicitly limited the act's remedy to situations where the derogation of

secured rights occurs by threats, intimidation or coercion in order to prevent it from estab-

lishing a vast constitutional tort."  Glovsky v. Roche Bros. Supermarkets, Inc., 469 Mass. 752,

762, 17 N.E.3d 1026, 1035 (2014) (internal punctuation and quotations omitted).

As the Glovsky court explained:

> For purposes of the act, we define "threats, intimidation or coercion" as
> follows: a "threat" consists of "the intentional exertion of pressure to
> make another fearful or apprehensive of injury or harm"; "intimidation"
> involves "putting in fear for the purpose of compelling or deterring
> conduct"; and "coercion" is "the application to another of such force,
> either physical or moral, as to constrain him to do against his will
> something he would not otherwise have done." *Haufler v. Zotos,* 446
> Mass. 489, 505, 845 N.E.2d 322 (2006), quoting *Planned Parenthood
> League of Mass., Inc. v. Blake,* 417 Mass. 467, 474, 631 N.E.2d 985, cert.
> denied, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 122 (1994), and *Buster v.
> George W. Moore, Inc.,* 438 Mass. at 646, 783 N.E.2d 399. We employ a
> reasonable person standard in determining whether a defendant's
> conduct constitutes such threats, intimidation, or coercion. *Haufler v.
> Zotos, supra.* A claim under the act is properly dismissed where the
> allegations in the plaintiff's complaint fail to satisfy this standard. See, e.g.,
> *Brum v. Dartmouth,* 428 Mass. 684, 708, 704 N.E.2d 1147 (1999).

Glovsky, 469 Mass. at 762-63, 17 N.E.3d at 1035.  As detailed herein, the plaintiffs have not

alleged sufficient facts to satisfy the requirement of "threats, intimidation or coercion."

### 2.    Analysis

With respect to Kris Gaff, the plaintiffs assert that he failed to turn over a surveillance

tape and testified that he could not identify the plaintiff after reviewing the surveillance tape.

(Compl. ¶¶ 6, 31, 32). They also complain that he participated in the trial generally and

encouraged the prosecution of the case.  (See id.).  None of this conduct constitutes threats, intimidation or coercion, and the plaintiff does not argue otherwise.

Plaintiff's principal argument is that Mr. Arias' arrest satisfied the requirement of threats, intimidation or coercion.  An arrest without probable cause may be a basis for a claim under the MCRA.  Daley v. Harber, 234 F. Supp. 2d 27, 31-32 (D. Mass. 2002); see also Nuon v. City of Lowell, 768 F. Supp. 2d 323, 335 n.8 (D. Mass. 2011), and cases cited ("An arrest without probable cause has been found to constitute coercion within the meaning of the MCRA."). Similarly, "[a]rranging for the arrest" of a person without probable cause "may be sufficient to satisfy the requirement of threats, intimidation or coercion."  Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 371 (D. Mass. 2002).  However, such conduct must go beyond the protected activity of simply providing information to the police.  See Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 92-93, 711 N.E.2d 911, 918-19 (1999), and cases cited (repeatedly threatening the plaintiffs that they would be arrested if they did not vacate proper-ty, and pressing the police to arrest the plaintiffs for being on property, satisfies requirement of threats, intimidation or coercion).  In the instant case, neither "arranging for the arrest," nor the arrest of Mr. Arias, can be attributed to the Home Depot Defendants.

Under the facts as alleged, while Officer Leonard was working a paid detail, he saw someone trying to steal goods from Home Depot.[8]  (Compl. ¶ 5).  When the truck driver was confronted by Officer Leonard, and drove away, Officer Leonard apparently initiated a chase, which ultimately involved Everett, Chelsea and Boston police.  (See id.).  There are no

---

[8] Since the MCRA does not require a state actor, it does not matter whether Officer Leonard's work as a security officer at Home Depot was in a private capacity or under color of state law.

allegations that Home Depot participated in the chase.  Boston Police ultimately stopped Mr.

Arias, after which Officer Leonard went over to an address in East Boston and identified

Mr. Arias.  (See id.).  Since the Everett police arrested Mr. Arias, booked him, and charged him,

it is clear that Officer Leonard was acting in his capacity as an Everett Police Officer.  (See id.

¶¶ 6, 36, 40).  The action in arresting Mr. Arias cannot be attributed to Home Depot.  Similarly,

there are no facts alleged (as opposed to mere conclusion) that Mr. Gaff did anything more

than provide information to the police, which may ultimately have contributed to their decision

to charge and prosecute Mr. Arias.  (See id. ¶¶ 6, 31).  Consequently, since there are no

allegations that Home Depot or Mr. Gaff engaged in threats, intimidation or coercion, Count I

as against the Home Depot Defendants must be dismissed.

  **D.**  **Count II: Deliberate Indifference**[9]

  In Count II of the Amended Complaint, entitled "deliberate indifference," the plaintiffs

allege that they "were denied the rights secured to them by the due process clause of the Fifth

and Fourteenth Amendments to the United States Constitution."  (Compl. ¶ 28).  Specifically,

with respect to the Home Depot Defendants, it is alleged as follows:

> Defendant Home Depot Asset Protection Manager Kris Gaff, was in a
> supervisory position and presumably responsible for implementing Home
> Depot policies.  It is a question of fact whether he disregarded policies
> concerning preservation and disclosure of evidence held by the Home
> Depot and whether he trained, encouraged and allowed other Home
> Depot personnel to disregard the rights of accused shoplifters or thieves
> such as the Plaintiff, Jorge Arias in the area of preservation and disclosure
> of evidence.  It is a question of fact whether Asset Protection Manager Kris
> Gaff was a 'special officer' and can be held to a higher standard than a

---

[9] As detailed in connection with the Municipal Defendants' claims, Count II purports to be brought on
behalf of both "plaintiffs."  (Compl. ¶ 28).  Nevertheless, it is based only on the wrongs allegedly done to
Mr. Arias.  Since whether this Count applies to one or both plaintiffs is not relevant to the Home Depot
Defendants' motion to dismiss, it will not be discussed further here.

> regularly employed security officer.  As a direct result of the Defendant
> Home Depot Asset Protection Manager Kris Gaff's callous and reckless
> disregard of the rights of individuals, such as the Plaintiff Jorge Arias, he
> was denied the rights secured to him by the due process clause of the
> Fifth and Fourteenth Amendments to the United States Constitution and
> the following rights: freedom from the unlawful seizure of his person,
> freedom from deprivation of liberty without due process, freedom from
> the use of unreasonable, unjustified and excessive force, freedom from
> cruel and unusual punishment, freedom from summary punishment, also
> guaranteed to him by the Constitution of the Commonwealth of
> Massachusetts.

(Id. ¶ 41).  Although entitled "deliberate indifference," Count II uses that phrase to describe a callous disregard of the plaintiffs' constitutional rights.  The parties agree that Count II purports to state a claim pursuant to 42 U.S.C. § 1983.  Because plaintiffs have failed to allege facts sufficient to establish that the Home Depot Defendants are state actors, their motion to dismiss is allowed.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quotations and citation omitted).  It states:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress....

42 U.S.C. § 1983.  "A claim under section 1983 has two essential elements.  First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).  "When the named defendant in a section

1983 case is a private party, the plaintiff must show that the defendant's conduct can be classified as state action.  The state action inquiry is preliminary to, and independent of, the due process inquiry.  If there is no state action, the plaintiff's claim fails."  <u>Jarvis v. Village Gun Shop, Inc.</u>, 805 F.3d 1, 8 (1st Cir. 2015) (citing <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838, 102 S. Ct. 2764, 2770, 73 L. Ed. 2d 418 (1982)).  Private parties can be viewed as state actors "only in rare circumstances," and "[t]he bar for such a showing is set quite high[.]"  <u>Jarvis</u>, 805 F.3d at 8.  The plaintiff has the burden of pleading state action in the complaint, and the failure to do so requires that the complaint be dismissed.  <u>Grapentine v. Pawtucket Credit Union</u>, 755 F.3d 29, 32 (1st Cir. 2014).  The plaintiffs in the instant case have not met their burden.

    "A private party may become a state actor if he assumes a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity."  <u>Santiago v. Puerto Rico</u>, 655 F.3d 61, 68 (1st Cir. 2011) (internal punctuation and quotations omitted).  With respect to the first prong, the traditional public function test, a private party is a state actor only when he exercises "powers traditionally *exclusively* reserved to the State."  <u>Id.</u> at 69 (emphasis in the original).  "Exclusivity is an important qualifier, and its presence severely limits the range of eligible activities.  The narrowness of this range is no accident" as "it is meant to counteract a state's efforts to evade responsibility by delegating core functions to private parties."  <u>Id.</u>, and cases cited.  In the instant case, the fact that Kris Gaff may have been responsible for "asset protection" or security at Home Depot, and in that role may have assisted the police in their investigation and prosecution, does not make him a state actor: such

responsibilities are not traditionally and exclusively reserved to state government. <u>Carney v.</u>
<u>Town of Weare</u>, No. 15-CV-291-LM, 2017 WL 680384, at *12 (D.N.H. Feb. 21, 2017) (fact that
defendant had allegedly "taken over the police department" for "all internal affairs investiga-
tions" did not make him a state actor: conducting investigations is not exclusively the role of
state government).

Similarly, the plaintiffs have not alleged facts which would support the conclusion that
Home Depot, or Mr. Gaff, "coerced or significantly encouraged" the Everett police to pursue
the criminal prosecution of Mr. Arias. According to the Complaint, Officer Leonard identified
Mr. Arias as the perpetrator, and the Everett police arrested Mr. Arias. (See <u>Compl.</u> ¶ 6). There
is no allegation that the private actors of Home Depot or Mr. Gaff inserted themselves into the
process so as to take on the role of a state actor. Similarly, the allegation is that Mr. Gaff did
not identify Mr. Arias as the perpetrator. (<u>Id.</u>). Thus, there is no basis to infer from the
allegations that Mr. Gaff "either exercise[d] a peculiar degree of control over the charging
official or adamantly presse[d] that official to bring a criminal complaint [so that] he may be
held responsible for the institution of the prosecution." <u>Limone v. United States</u>, 579 F.3d 79,
89 (1st Cir. 2009).

Finally, the plaintiffs have alleged, in a conclusory fashion, that "Home Depot and Kris
Gaff were instrumental in the prosecution of the criminal matter" and "acted in concert with
the Defendant Police Officers Hannon and Leonard." (<u>Compl.</u> ¶¶ 31, 33). These allegations are
insufficient to support a finding that the Home Depot Defendants were state actors. "A plaintiff
may demonstrate state action by showing that a private party has conspired with state actors
to deprive him of a civil right." <u>Carney</u>, 2017 WL 680384, at *14. However, "the relationship or

nature of cooperation between the state and a private individual [must] be pled *in some*

*detail*." McGillicuddy v. Clements, 746 F.2d 76, 77 (1st Cir. 1984) (internal quotations omitted)

(emphasis in original).  Here, the "conclusory allegations" of the complaint "are insufficient to

establish state action under the joint action test." Carney, 2017 WL 680384, at *13 n.17, and

cases cited.

In sum, the plaintiffs have not met their burden of alleging that the Home Depot

Defendants acted under color of state law.  Therefore, their motion to dismiss Count II of the

Complaint, alleging a violation of 42 U.S.C. § 1983, is allowed.

### E.     Count VI: Intention Infliction of Emotional Distress[10]

In Count VI of the Complaint, the plaintiffs allege that the "individual defendant officers

behaved intentionally and outrageously in inflicting pain, fear, and humiliation upon the plain-

tiff." (Compl. ¶ 29).  Plaintiffs further clarified that this Count was directed to

> Home Depot, Kris Gaff and the Everett Police Officers Hannon and
> Leonard who set the prosecution in motion, continued with the
> prosecution even in the face of credible evidence that Officers Hannon,
> Leonard and Gaff were mistaken in identifying the Plaintiff, Jorge Arias
> and by failing to produce evidence that was clearly in the possession of

---

[10] In light of the fact that all the federal claims are being dismissed, this federal court may decline to
exercise pendant jurisdiction over the state law claim. See 28 U.S.C. § 1367; Pease v. Burns, 719 F. Supp.
2d 143, 155 (D. Mass. 2010) ("In the absence of a cognizable federal claim forming the basis of the
subject matter jurisdiction, this court declines to exercise supplemental jurisdiction over any pendant
state law claims alleged in the Complaint.").  Furthermore, this court recognizes that "the balance of
competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims
where the foundational federal claims have been dismissed at an early stage in the litigation." Camelio
v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). However, in light of the fact that this case has been
through a motion to dismiss in the state court already, and because this court finds it clear that there
are no facts alleged to support a claim for intentional or negligent infliction of emotional distress against
the Home Depot Defendants, this court concludes that this is "an instance in which the exercise of
supplemental jurisdiction is warranted[.]" Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 143 (D.
Mass. 2012). Thus, this court will address the merits of the motion to dismiss the state law claims.  See
Wilmot v. Tracey, 938 F. Supp. 2d 116, 142 (D. Mass. 2013).

> Kris Gaff and Home Depot causing Angel Arias and his father **negligent infliction of emotional distress**.  Or, alternatively, in the face of credible evidence, nevertheless, these same Defendants conspired to continue with their false testimony at the second trial in 2014, thereby continuing to cause Jorge Arias and Angel Arias **intentional infliction of emotional distress.**

(Id. ¶ 36).  Even viewing the well-pleaded allegations of the complaint most favorably to the plaintiffs, however, the plaintiffs have failed to state a claim for intentional infliction of emotional distress against the Home Depot Defendants.

To make out a claim for intentional infliction of emotional distress under Massachusetts law, a claimant must prove:

> (1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Limone, 579 F.3d at 93-94 (citation omitted).  Here, Mr. Gaff testified that "he had reviewed a store surveillance video of the suspect and that he was unable to identify [Mr. Arias] as the person in that video[,]" and "that it was common for people who looked and dressed like the defendant to be in the Home Depot in Everett."  (Compl. ¶ 6).  Plaintiff's claim of wrongdoing on Mr. Gaff's part is that he "failed to produce said video to Court at the trial in this matter" and "[h]is testimony, therefore did not exculpate the Plaintiff."  (Id.).  Even under the most liberal reading of the Complaint, the plaintiffs have failed to allege any conduct "which could be characterized as extreme and outrageous as a matter of law[,]" so that the Home Depot Defendants' motion to dismiss this Count must be allowed.  Gouin v. Gouin, 249 F. Supp. 2d 62,

78 (D. Mass. 2003) (motion to dismiss claim of intentional infliction of emotional distress

allowed where allegations of complaint insufficient); see also Godette v. Stanley, 490 F. Supp.

2d 72, 81 (D. Mass. 2007) (plaintiff's IIED claim fails where the facts alleged are not sufficiently

outrageous to support a cause of action. Arrest without probable cause alone would not be

sufficient to state a claim.).

### F.    Count VII: Negligent Infliction of Emotional Distress

> To prevail on a claim of negligent infliction of emotional distress, Plaintiff
> must show: "1) negligence; 2) emotional distress; 3) causation; 4) physical
> harm manifested by objective symptomatology; and 5) that a reasonable
> person would have suffered emotional distress under the circumstances
> of the case." Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007)
> (quoting Payton v. Abbott Labs, 386 Mass. 540, 557 (1982)). "As with any
> sort of negligence, negligence in the context of an emotional distress claim
> requires that the defendant have owed plaintiff a duty of care that was
> breached in some way." Delmonte v. Laidlaw Envtl. Servs., Inc., 46 F. Supp.
> 2d 89, 96 (D. Mass. 1999) (citing Urman v. South Boston Savings Bank, 424
> Mass. 165, 171 (1997)).

Lockwood v. Madeiros, No. 4:18-CV-40143-DHH, 2018 WL 4087938, at *8 (D. Mass. Aug. 27,

2018).  Again, the allegations of the complaint are insufficient to state a claim against the Home

Depot Defendants for negligent infliction of emotional distress.

In addition to the allegations regarding Home Depot's conduct, the plaintiffs also have

alleged that given Mr. Arias' immigrant status, a foreseeable consequence of the defendants'

negligent infliction of emotional distress was that the plaintiffs would be involved in deporta-

tion proceedings.  (See Compl. ¶ 37).  This allegation does not provide additional facts to

support a claim of negligent infliction of emotional distress.  Given Mr. Gaff's testimony, which

did not identify Mr. Arias as the perpetrator, and the absence of any allegation that Mr. Gaff

committed perjury or otherwise testified untruthfully, there are simply no facts to support this

[21]

claim.  See Godette, 490 F. Supp. 2d at 81 (absent negligence, claim of negligent infliction of

emotional distress must fail).  Similarly, the allegations of the Complaint fail to establish that

the Home Depot Defendants had any obligation to turn over the tape – it was the state actors'

obligation.  See note 6, supra.  Absent a duty, the claim that the Home Depot Defendants acted

negligently must fail. [11]

### IV.  ANALYSIS – MUNICIPAL DEFENDANTS' MOTION TO DISMISS

#### A.    Timeliness of Constitutional Claims

As an initial matter, and to avoid any further confusion, this court concludes that Counts

I and II of the Complaint are brought only on behalf of Mr. Arias.  Count I by its terms refers

only to the "plaintiff" in the singular, and is obviously brought on Mr. Arias' behalf.  While

Count II refers to "plaintiffs" in the plural, it is based on the arrest and prosecution of Mr. Arias.

(See, e.g., Compl. ¶ 28, which refers to the rights "of accused individuals, such as Plaintiff").

The Municipal Defendants have argued that Count II does not apply to Angel, and the plaintiffs

have not countered that argument.  (See Mun. Defs. Mem. (Docket No. 11) at 11-12).  There-

fore, this court interprets Counts I and II of the Complaint as being brought only on behalf of

Mr. Arias.  See also Sena v. Commonwealth, 417 Mass. 250, 264-65, 629 N.E.2d 986, 994 (1994)

("As to the claims under 42 U.S.C. § 1983, '[t]he spouse of an alleged federal civil rights victim is

not permitted an ancillary cause of action for loss of consortium.'" (quoting Tauriac v. Polaroid

Corp., 716 F. Supp. 672, 673 (D. Mass. 1989), and cases cited)).

---

[11] In light of this court's rulings on the tort claims, this court will not reach the issue whether the tort claims against the Home Depot Defendants are time-barred.

The Municipal Defendants have argued that Mr. Arias' claims under the MCRA (Count I) and pursuant to 42 U.S.C. § 1983 (Count II) are time-barred.  (Mun. Defs. Mem. at 9-12).  It is the Municipal Defendants' contention that the statute of limitations for these claims accrued either at the time of Mr. Arias' arrest on February 27, 2007, or at the latest at the time of his conviction on August 4, 2008.  (Id. at 9).  However, Mr. Arias is not limiting his constitutional claims to a false arrest claim.[12]  Rather, he objects strenuously to the two prosecutions and his continued incarceration in the absence of probable cause.  As detailed herein, these allegations support a claim of malicious prosecution, which is not time-barred.  For such a claim, the statute of limitations did not begin to run until Mr. Arias was acquitted in the second trial on September 24, 2014.  (See Compl. ¶ 14).  Suit was filed on September 22, 2017, within three years after the cause of action accrued.  (See Docket No. 1 at 1).  Consequently, Counts I and II against the Municipal Defendants will not be dismissed on statute of limitations grounds.  Further parsing of the factual basis of the plaintiff's constitutional claims is not necessary at the motion to dismiss stage.

The First Circuit has explicitly recognized that there is a Fourth Amendment right to be free from malicious prosecution, and that such a claim is actionable under § 1983.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 99-101 (1st Cir. 2013).  Similarly, courts recognize a "coextensive MCRA malicious prosecution claim[.]"  See Wilson v. Town of Fairhaven, No. 18-cv-11099-PBS, 2019 WL 1757780, at *13 (D. Mass. Mar. 4, 2019), report and recommendation adopted, No.

---

[12] The accrual date for § 1983 and MCRA false arrest claims is generally the date of the arrest or indictment: "[f]avorable termination of the proceedings is not an element of the false arrest claim."  Mitchell v. City of Boston, 130 F. Supp. 2d 201, 215 (D. Mass. 2001), and cases cited.  Damages for a false arrest claim "cover the time of detention up until issuance of process or arraignment, but not more."  Id. at 215 (quoting Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371, 129 L. Ed. 2d 383 (1994)).

1:18-cv-11099, 2019 WL 1760591 (D. Mass. Mar. 19, 2019).[13]  To prevail on a claim of malicious

prosecution under federal law, the plaintiff must "'establish that: the defendant (1) caused (2) a

seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) crimi-

nal proceedings terminated in plaintiff's favor.'"  Pagan-Gonzalez v. Moreno, 919 F.3d 582, 601

(1st Cir. 2019) (quoting Hernandez-Cuevas, 723 F.3d at 101).[14]  Police officers may be deemed

to have caused the seizure, and remain liable to a wrongfully indicted defendant, when they

have "(1) 'lied to or misled the prosecutors'; (2) 'failed to disclose exculpatory evidence'; or

(3) 'unduly pressured the prosecutor to seek the indictment.'"  Wynn v. Schmidt, No. 16-10190-

RGS, 2017 WL 4169746, *9 (D. Mass. Sept. 20, 2017) (quoting Evans v. Chalmers, 703 F.3d 636,

647-48 (4th Cir. 2012)).  The allegations in the instant case are sufficient to state such a claim.

A fair reading of the complaint establishes that Mr. Arias has alleged that Officer

Leonard (and Officer Hannon) lied about the number of people in the truck, as well as in

connection with Officer Leonard's identification of Mr. Arias at the Boston police station,

thereby leading to his unlawful arrest.  (See Compl. ¶¶ 5, 6, 36, 38).  A fair reading of the

Complaint is that, according to the plaintiffs, Mr. Arias would not have been arrested (i.e., there

would not have been probable cause for his arrest) if the information in the Chelsea report of

three men in the truck had been considered by the arresting officers, and Officers Leonard and

---

[13] As detailed above, the statutes differ in that the MCRA does not need to involve state actors, but does require proof of threats, intimidation or coercion.  Since the Municipal Defendants do not raise substantive arguments concerning these elements in their motion to dismiss, they will not be addressed further herein.  This court does note, however, that a malicious prosecution claim premised on an arrest and charge based on false and omitted evidence has been found sufficient to satisfy the MCRA requirement of coercion.  See Lucien-Calixte v. David, No. 17-11312-NMG, 2019 WL 4417690, at *6-7 (D. Mass. Sept. 16, 2019).

[14] Unlike the state law claim for malicious prosecution, the constitutional claim does not expressly require malice.  See Hernandez-Cuevas, 723 F.3d at 100-03 (discussing differences).

[24]

Hannon had not lied.  (See id. ¶ 38).  In addition, the plaintiffs have alleged that the Municipal

Defendants failed to disclose exculpatory evidence.[15]  (See id. ¶¶ 13, 14, 31, 32).  As a result of

this wrongful conduct, Mr. Arias was wrongfully arrested, incarcerated, and put through two

trials until he was finally acquitted.  (See id. ¶40).  This states a claim for a § 1983 and MCRA

malicious prosecution claim.  See Lucien-Calixte, 2019 WL 4417690, at *3-7 (malicious

prosecution claims "contemplate damages from the initial arrest throughout any unlawful

detention pursuant to legal process."); see also Consenza v. City of Worcester, 355 F. Supp. 3d

81, 97 (D. Mass. 2019) (motion to dismiss constitutional malicious prosecution claim denied

where plaintiff was prosecuted and convicted before a new trial was ordered and charges were

dropped on retrial: allegations sufficient to establish that plaintiff was arrested without

probable cause).

It is well-established that the limitations period for an MCRA claim is three years.  See

Bettencourt v. Town of Mendon, 334 F. Supp. 3d 468, 483 (D. Mass. 2018); Mass. Gen. Laws ch.

260, § 5B.  Similarly, there is a three-year statute of limitations for claims brought under § 1983.

Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001).  Federal law determines the accrual date

of the federal claims.  Villanueva-Méndez v. Nieves-Vázquez, 440 F.3d 11, 15 (1st Cir. 2006)

(citation omitted).  With respect to a constitutional claim based on an underlying claim of

malicious prosecution, the statute of limitations begins to run only after the criminal proceed-

ing terminates in favor of the accused.  See Heck, 512 U.S. at 484, 114 S. Ct. 2364, 2371, and

cases cited; see also McDonough v. Smith, 139 S. Ct. 2149, 2156, 204 L. Ed. 2d 506 (2019)

---

[15] While the plaintiffs focus on the Municipal Defendants' failure to disclose the Chelsea report, as detailed above these defendants may also be liable for failing to disclose the Home Depot surveillance tape, especially since it was identified in the first trial.  See note 6, supra.

(statute of limitations in tort claim of malicious prosecution accrues "only once the underlying criminal proceedings have resolved in the plaintiff's favor.").  The same is true for a malicious prosecution claim under the MCRA.  <u>Wilson</u>, 2019 WL 1757780, at *13.  In the instant case, Mr. Arias brought this suit within three years of his acquittal.  Therefore, his constitutional claims for malicious prosecution are timely.

      **B.**      **<u>Counts VI & VII: Infliction of Emotional Distress – Jorge Arias</u>**

The Municipal Defendants have moved to dismiss the claims of intentional and negligent infliction of emotional distress brought by Mr. Arias on the grounds that they are time-barred.  It is undisputed that these tort claims are governed by the three-year statute of limitations found in Mass. Gen. Laws ch. 260, § 2A.  At issue in the instant case is when the causes of action accrued.  The general rule is that a tort action accrues when the plaintiff is injured.  <u>Koe v. Mercer</u>, 450 Mass. 97, 101, 876 N.E.2d 831, 836 (2007) (citations omitted).  However, the "discovery rule" applies "to determine when the statute of limitations begins to run in circumstances where the plaintiff did not know or could not reasonably have known that he or she may have been harmed by the conduct of another."  <u>Id.</u>  "Generally, an issue concerning what the plaintiff knew or should have known is a factual question that is appropriate for the trier of fact."  <u>Id.</u>

There does not appear to be any "Massachusetts case law on whether a claim of intentional infliction of emotional distress arising from the allegation of the fabrication of evidence resulting in a criminal conviction accrues on the date of the fabrication or the date the criminal proceedings are terminated in favor of plaintiff."  <u>Mitchell v. City of Boston</u>, 130 F.

Supp. 2d 201, 216 (D. Mass. 2001).[16]  While the Municipal Defendants argue that Mr. Arias's

claims arose prior to his conviction in his first trial (see Mun. Defs. Mem. at 12), courts have

allowed claims of intentional infliction of emotional distress to proceed (along with malicious

prosecution claims) many years after a conviction, where the conviction was later overturned.

See Echavarria v. Roach, No. 16-cv-11118-ADB, 2017 WL 3928270, at *12 (D. Mass. Sept. 7,

2017), and cases cited (claim of intentional infliction of emotional distress allowed to proceed

where "Plaintiff claims that Defendants fabricated false evidence and suppressed exculpatory

evidence to frame him for a murder he did not commit" and he "served more than twenty

years in prison before his release.").  Similarly, with respect to the claim of negligent infliction

of emotional distress, the issue of what the plaintiff knew or should have known would be

better determined after further development of the record.  See Id. at *13.  Therefore, the

motion to dismiss the tort claims of Mr. Arias as time-barred is denied without prejudice.

### C.    Counts VI & VII: Infliction of Emotional Distress – Angel Arias

No party is contending that the tort claims brought by Angel Arias are time-barred, since

he did not turn 18 until 2018, after suit was filed.  (See Pls. Mun. Opp'n (Docket No. 17) at 5-6).

Nevertheless, the Municipal Defendants have sought to dismiss these claims brought by Angel.

The basis for their motion to dismiss is not clear to this court.  Since it appears to this court that

the allegations of Angel's claims are sufficient, the motion to dismiss is denied.

---

[16] In Mitchell, the plaintiff was convicted of forcible sexual intercourse with a minor, and was ultimately
exonerated by DNA evidence after serving 7 years of his sentence.  While acknowledging the uncertainty
in the law, the trial court concluded that plaintiff's claim of intentional infliction of emotional distress
was time barred because he "knew or should have known of the defendants' wrongful conduct at the
time of his trial, conviction, and incarceration."  Mitchell, 130 F. Supp. 2d at 216.

The Municipal Defendants point out that their conduct was not directed at Angel. Nevertheless, although his father was the focus of the Municipal Defendants' wrongful arrest and prosecution, Angel may state a claim for intentional infliction of emotional distress.  See Limone, 336 F. Supp. 2d at 42-46 (son of wrongfully convicted defendant may maintain a claim for intentional infliction of emotional distress).  Since the "extreme and outrageous conduct" was not directed at him, Angel must also establish "both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response" as a condition of liability.  Barone v. United States, No. 06-11923-RWZ, 2008 WL 11388577, at *10 (D. Mass. Sept. 25, 2008) (quoting Nancy P. v. D'Amato, 401 Mass. 516, 522, 517 N.E.2d 824, 828 (1988)). For the reasons detailed above, the allegations are sufficient to state a claim that the conduct directed to Mr. Arias was extreme and outrageous, resulting in his arrest and incarceration without probable cause.  The fabrication of evidence, causing plaintiff's arrest and detention without probable cause, along with withholding of exculpatory evidence, is sufficient to state a claim for intentional infliction of emotional distress.  See Burke v. Town of Walpole, No. Civ.A. 00-10376-GAO, 2003 WL 23327539, at *12 (D. Mass. Aug. 5, 2003).  Since Angel has also alleged his contemporaneous knowledge of the events and that he suffered a severe emotional response, Angel's claim of intentional infliction of emotional distress will not be dismissed.  See Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 412-13, 772 N.E.2d 552, 566-67 (2002) (discussing physical manifestation of emotional distress).

The Municipal Defendants also argue that the claim of negligent infliction of emotional distress must fail because the challenged conduct "can hardly be said to be outrageous."  (Mun. Defs. Mem. at 15).  However, that is not the standard for negligent infliction of emotional

distress.  In any event, Angel may maintain a claim for negligent infliction of emotional distress based on conduct directed at his father.  See Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 700-02, 823 N.E.2d 1249, 1253-54 (2005) (discussing elements of a claim brought by a third party).  It is a fact specific inquiry that will await further development of the record.

Finally, the plaintiffs argue that Angel may maintain a claim for loss of consortium, independent of his father's claim.  (See Pls. Mun. Opp. at 5).  That claim, however, is not specifically alleged in the complaint.  In light of this court's denial of the motion to dismiss Angel's tort claims, the factual development of the record will be the same for a potential loss of consortium claim as well.  Therefore, this court makes no ruling as to whether further amendment of the complaint to state a loss of consortium claim would be appropriate.

D. **Immunity and Municipal Liability**

Finally, the Municipal Defendants argue that their liability is restricted on the basis of qualified immunity and the limits of municipal liability.  On these issues, this court rules as follows.

Count I, alleging a violation of the MCRA, must be dismissed against the City of Everett. A municipality is not a "person" covered by the MCRA.  See Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-92, 747 N.E.2d 729, 744 (2001).  Similarly, the MCRA claim cannot be maintained against the individual defendants in their official capacities.  Id. at 593, 747 N.E.2d at 745.  Consequently, liability under Count I will be limited accordingly.

[29]

With respect to Count II pursuant to 42 U.S.C. § 1983, the Complaint has sufficiently plead a claim against the City of Everett.[17]  "Although 'a municipality cannot be held liable under § 1983 on a *respondeat superior* theory,' § 1983 'imposes liability on a government that, under color of some official policy, "causes" an employee to violate another's constitutional rights.'"  Cosenza v. City of Worcester, 355 F. Supp. 3d 81, 91 (D. Mass. 2019) (quoting Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691-92, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)).  "Thus, to succeed, a plaintiff must show that the violation occurred as a result of the munici- pality's 'policy or custom.'"  Cosenza, 355 F. Supp. 3d at 91 (quoting Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir 2013) (internal quotation omitted).  In the instant case, the plaintiff has alleged that the wrongful conduct was done pursuant to "rules, regulations, procedures, policies, custom, deficiencies and omissions" and improper training, among other things.  (See Compl. ¶¶ 25, 40).  These allegations are sufficient to state a § 1983 against the City.  However, "individual defendants in their official capacities are not 'persons' under § 1983."  Howcroft, 51 Mass. App. Ct. at 583 n.15, 747 N.E.2d at 738 n.15.  Count II will be limited accordingly.

With respect to the tort claims, the City is not liable for the intentional torts of its public employees, including false arrest, false imprisonment, intentional infliction of emotional distress, abuse of process, and malicious prosecution.  Mass. Gen. Laws ch. 258, § 10 (2018).  Suits for negligence, on the other hand, can be instituted against a public employer, upon proper notice.  Mass. Gen. Laws ch. 258, § 2 (2018).  Public employees cannot be sued for

---

[17] The Municipal Defendants equate the "deliberate indifference" claim to a negligence claim in their section on immunity.  (See Mun. Defs. Mem. at 16).  For the reasons described above, this is a claim under 42 U.S.C. § 1983.

negligent acts they committed while acting within the scope of their employment.  Id.  Counts

VI and VII will be limited accordingly.

### V.  CONCLUSION

For all the reasons detailed here, the motion to dismiss of the Home Depot Defendants

is ALLOWED.  The motion to dismiss of the Municipal Defendants is ALLOWED IN PART and

DENIED in PART as follows: Count I is dismissed as to the City of Everett and the individual

defendants in their official capacities only; Count II is dismissed against the individual

defendants in their official capacities only; Count VI is dismissed as to the City of Everett only;

and Count VII is dismissed against the individual defendants in their official capacities only.

Otherwise, the Municipal Defendants' motion to dismiss is denied.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge